Good morning Your Honor, Gina Lipkin on behalf of the Petitioner, this is an asylum case from the Board of Appeals. Petitioner contends that the Board erred in failing to find that the immigration judge's adverse credibility finding was erroneous and failing to reach the issue of whether he could safely relocate within India. In regards to the adverse credibility finding, the judge relied purely on conjecture and inappropriately penalized the Petitioner for having submitted a supplemental statement prior to the individual hearing to correct mistakes that were in the original statement that was prepared, I believe he was in detention or shortly out of detention, where he claimed that the person who prepared that statement did not read it back to him in his native language of Punjabi. The supplemental statement corrected the mistake during the April 2012 arrest where he initially indicated he was arrested with his brother and rendered unconscious and he corrected that to diminish actually the harm he suffered and alleged his brother was not with him at the time he was harmed, he was somewhere else but also harmed in the same day and he was not rendered unconscious. There were other issues that the IG relied on, is that right? Well, there was... The IG found him not credible because of his demeanor, the inconsistency that you just pointed to. Well, in regards to the demeanor... And the impossibility. Right. I'll address the demeanor issue. The demeanor issue that Judge King had rested her findings on was boilerplate as we argue in the brief. She did not really explain how a gesture or a look or his countenance somehow was related to what he was saying and how that might have in some way negatively affected his credibility. She just made a blanket statement which was improper. But she found that he was non-responsive in a number of areas, right? She found that he was non-responsive, however, the petitioner testified regarding... The issues of non-responsiveness had to do with the changes that he had made in the supplemental statement. He kept trying to explain that the first statement was improperly translated to him and instead of giving weight, whatever weight she wanted to give to that explanation, she stated he was non-responsive. Again, she didn't give detail exactly why he was non-responsive on a certain point that she found him non-responsive. In regards to plausibility, again, that was sort of a generalized finding. She merely relied on, without making an individualized analysis regarding the location, that petitioner failed to provide even more documentary evidence in regards to background documents regarding attacking D.R.S.S. members such as himself, although in exhibit 7 he did provide a number of documents establishing there were clashes, seeks attacking D.S.S. members like him. There's also the issue of relocation. The board did not address relocation resting its affirmance of the IG's decision on the adverse credibility finding, but in fact, relocation is a central issue of his claim and due to the lack of analysis regarding any individualized harm that he would suffer should he relocate and the fact that the government never offered any suggestion as to where he might safely relocate. The BIA didn't address relocation, right? Exactly. If you were to prevail on adverse credibility arguments, you would have to go back to the board for consideration of all the other issues. Is that right? That's what we thought. And if you don't prevail, then it doesn't matter if that issue was not reached. Correct. That is true. However, there is one more issue here and that's his cast claim of convention against torture. The board found that due to the adverse credibility finding, he was ineligible for cat release. However, that's improper. The board is supposed to look at the background documentary evidence, specifically in exhibit seven, to find whether the country conditions prevented him from safely avoiding torture. Was there anything in the record that would indicate that the petitioner would be tortured with the acquiescence of the government? Well, there was the time his family tried to make a police report. He was fingerprinted by the police and then threatened, don't make any more reports. But that's not torture, though, is it? He was not tortured. However, he was denied the protection of the state when trying to complain against a cardinal member who had his accent. And in light of the police threats against him for making future complaints, that suggests a high probability that the police would acquiesce or turn a blind eye to any further competition subject to by members of the college board. So the BIA decision didn't stop with the adverse credibility determination when addressing the cat claim. It also went on to say that the respondent did not establish that he more than likely did not suffer torture by or with the acquiescence of a public official. Isn't that enough? The board addressed that but didn't properly analyze it. In light of the petitioner's appellate arguments regarding what I had just mentioned, that the police had threatened him not to complain again. Therefore, he couldn't possibly seek the protection of the police in the future should he encounter a study of college. But the goal is not required to address every piece of evidence in reaching this decision, is it? It's supposed to look at all the evidence. Does it have to address each piece of evidence? We assume that the board looked at all the evidence, but does the board have to address each piece of evidence in its decision? I think in light of an adverse credibility finding, when the board addresses several points, then an IG might make that pretty sufficient. But here, the board did not at all appear to consider the petitioner's appellate arguments regarding the acquiescence of the police, regarding past harm he suffered, and therefore the likelihood of future harm he would suffer. So what came to your mind to support your argument that the language that's in the board's decision is not sufficient? We quoted Elman Bowser v. Gonzalez in their brief regarding the requirement of the board to address the background documents and give it weight regarding an applicant's future  What specific language in Elman Bowser are you relying upon? Part of the second page, you rely upon a specific language. 922 to 923 regarding a background document, a specific Department of State report, would compel a conclusion of an applicant would be more likely than not to be tortured. It says here on page 922, there is no evidence that the IJ failed to consider the evidence. For that case, but in this case we argue that the IJ did. The Department of State report on the first page stated that the police act of impunity have not been brought to justice for acts of impunity against detainees, against people who sought redress. Similar in this situation, the petitioner had gone to the police to make a complaint against the IKALIDAL. They not only turned him away, they threatened him not to come to them again, clearly showing the same sort of level of impunity that the board failed to take into consideration. Thank you. Thank you for your few seconds left. Yes. Five minutes. Mr. Attorney General. Good morning, Your Honor. May it please the Court, Todd Cochran on behalf of the Attorney General. The court has denied a petition for review because substantial evidence supports the agency's determination that Mr. Singh... Problems with the voice again. I'm going to move it closer if that helps. No, it makes it worse. Sorry. Is that any better? May it please the Court. That's probably a little better. Let's see if Mrs. Weintraub can talk about it. Okay. Okay. May it please the Court, Todd Cochran on behalf of the Attorney General. Can the audience hear? Yes. Well, let's see if I can get Mrs. Weintraub to go ahead and have her order the petition. Yes, Your Honor. May it please the Court, Todd Cochran on behalf of the Attorney General. The court has denied a petition for review because substantial evidence supports the agency's determination that Mr. Singh failed to carry his burden to support some application with credible testimony. In light of contradictions between his testimony and his initial statement attached to his application, his non-responsive demeanor while testifying, and the implausibility of his Is that better? We're getting there. We're getting there. Shall I move forward or shall I wait? Keep going. Okay. Moreover, the documents he submitted neither rehabilitate his credibility nor independently prove his claim because the undetailed affidavits he provided were of interest to family members not subject to cross-examination, and the medical certificate and letter he submitted did not sufficiently describe the past harm he claimed to have suffered. So, let me take you through the BIA's decision. Mr. Kramer, you're relying on demeanor, inconsistencies, and implausibilities, right? Yes.  So, the demeanor. Mr. Kramer turned on the IJ's determination that Mr. Singh was non-responsive in several areas. Yes. Well, when you read the transcript, he tried to answer the question. He offered reason to try to answer the question, and then the IJ said, well, that's non-responsive. What's non-responsive mean? I think you get the IJ saying the answers weren't addressing the questions asked. For example, the IJ asked how the religious practices differed between the Sikhs and as an example. He also asked why has Baha'u'llah Rahim been your life's focus, and he said, and I quote, because Baha'u'llah Rahim has a lot of land in Sirsa where they grow a lot of wheat, and he does good human beings, and he does good things. Well, that's an answer. Why is that non-responsive? Well, I think the immigration judge was trying to understand the dispute between the Baha'u'llah Rahim followers and the Sikhs, which was the basis of his claim. The differences were what was the cause of the conflict, to try to see if he was being accurate, and he wasn't. He was not going to answer for the crux of that issue, Your Honor. So it's sort of like an attempt to evade answering when we know the answer is going to be one that's not helpful. Yes. It would be a basicness, yes. Well, you didn't say basic. You said non-responsive. Well, it's not responsive to the question being asked. Is that the same thing, being basic and being non-responsive? What does non-responsive mean to you? Well, I think non-responsive can mean a number of things. It can mean not responding at all. I'm not responding at all, right. It can also mean not answering the question being asked. Being basic, huh? Being basic, yes, Your Honor. I think he had an objection a lot. Yes, Your Honor. That was the right thing. Yes, Your Honor. I think from my own impression of that particular aspect of the idea of credibility and finding, I didn't find it all that persuasive. But he had others. Yes. Inconsistency. Inconsistency, yes. And there's a number as well where the Real Idea permits any one inconsistency to be in support of the agency's decision. Counsel, even if the denier findings thrown out, do you think they're still enough to support the adverse credibility determination? Yes, I do, Your Honor. As Judge Paisan mentioned, there are a number of other reasons. The inconsistency of the statement, between his initial statement and his testimony, and his testimony didn't seem to line up somewhat with his supplemental declaration that he submitted. There's also the implausibility where he continued to talk about the police were with the Sikhs and against his followers. And the document that he submitted showed that that, in fact, was not true. In Punjab, where he grew up and where he lives, when these events occurred, there was a number of articles in the record that he submitted showing that the police were trying to prevent any violence between men. They had, in fact, arrested more than 24 people in the article located at 186 in the record. He was a police raider who was holding an arrest of four rabid Sikhs, accused of being part of a monopoly attack about the Rahim followers. They also arrested and released two other Rahim followers. Some of these articles showed that they were trying to prevent any violence amongst the two religious followers. And they were, in fact, not supporting the Sikhs against the Rahim followers. So that was what the Identity and Implausibility Part was based upon, documents that Mr. Singh himself submitted that didn't make sense in light of his testimony with what they were looking at. On the inconsistency between the first statement and the second statement, there seems to be some confusion over whether or not Mr. Singh had an opportunity to clarify or to address the first statement at the hearing. Right? Wasn't there some confusion? Was the IJ spotting it out? You didn't correct the first statement? The IJ did provide multiple times warnings to Mr. Singh about the application would be true and correct, everything would be accurate. It's not funny about the second statement. Yes, and Mr. Singh, in 148 of the record, he said the initial statement was a shorter version and his attorney affirmed that and called the second statement the more detailed one. He didn't say this is a replacement for the first one. He just said this is more detailed. What if he said that this is a replacement for the first one? Can the IJ still find inconsistency between the first one and the second one? The IJ can. I think it cuts it back a little bit, Your Honor. Yes, the IJ can still compare any documents he submitted to see inconsistency and contradictions. I think if he had said this is replacing the first one, it would have made a harder analysis for the IJ to make, but he didn't say that here. He said it was a supplement to one, or the more detailed one was the second one. So say he would have described the second one as replacing the first one, would the IJ then have had an obligation to give him an opportunity to explain discrepancies? Yes, the IJ would have had an opportunity to explain discrepancies. I believe he was asked about the discrepancies. The main discrepancy, Your Honor, he said was on 415 that he was with his brother. Yes. And this is about being unconscious or in front of Americans or whatever. Yes, so in the original statement, he said he was with his brother. He was attacked out of the seats. They said they tried to kill me and my brother by twisting our necks and beating us on our chests, and we became unconscious and ran to save our lives. And then his second statement that he submitted three months later said that he was alone with his brother, that he got scared and he ran away, and there was no mention of these later claims of attacks on his brother that happened the same day, as he alleged. He testified, he said his brother was attacked the same day, twice, and then he got nervous and ran away. And the judge wanted to clarify the situation about being unconscious versus getting nervous, and the judge specifically said to him, you understand my paraphrasing, that unconscious means black and out there, unable to do anything else, and he simply understood that and he just got nervous, which contradicted what he said in his initial statement. Thank you. Would it be your position that even if you were to think that some of these inconsistencies and discrepancies were not really that significant and significant, you still would know because of the special deference that this court has to give to the creditorial findings of the injunctions? Yes, Your Honor. The substantial evidence stated that it would require the court to support two uphold cases of termination unless it's compelled to conclude that a different result is required, and as we've talked a couple of times, the Real Idea Act requires that it allows the interpretation to rely upon any one inconsistency, be it a possibility of documentary contradictions, any one of those is enough to support the agency's termination. It seems to me that that's the real problem the petitioner has, that there's a really tight bar on the Real Idea. Do you agree with that? I'm sorry, do you repeat the question? Well, it seems that the biggest problem the petitioner has here is that a tight bar has to get over on the Real Idea because of the special deference we have to give. That is definitely a challenge to the petitioner, Your Honor. Thank you. No further questions? None. The question is, my petition for review does not compel to find that Mr. Singh could be testified due to his nonresponsive demeanor, contradictions to his testimony and written statements, implausibility of his testimony, instead of to submit sufficient documentation to corroborate his crimes. As a result of essential evidence to support the agency's termination, the Mr. Singh failed to establish his eligibility for asylum, withholding, and cap protection. For the reasons discussed today and in the answer to the brief, the question is not a petition for review. Thank you. Okay, thank you. We'll hear about the petition in council. One minute and 19 seconds. 19 seconds. Your Honor, this put a stammer on an applicant's lack of detailed knowledge of religious requirements or beliefs in their religious genealogy, which is to find them incredible in this case. The government counsel brought up the fact that the petitioner wasn't able to give additional detail between the differences of the DSS and other seats, but the court found in G.M. versus Gonzales 45 of 39, which is second circuit, number circuit, that adverse critical finding could be overturned in IJ on improperly based findings of the applicant's belief system based on the IJ's own belief system of what a person should know about religious beliefs. Okay. Thank you, counsel. We appreciate your evidence this morning. Saini versus Barr is a significant disparity.
judges: Paez, Rawlinson, Anello